IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JIMMY LEE WILSON, SR.,** | : | **CIVIL ACTION** |
| *Plaintiff* | : | |
| | : | |
| v. | : | NO. 23-CV-0912 |
| | : | |
| **BUCKS COUNTY** | : | |
| **CORRECTIONAL FACILITY,** *et al.*, | : | |
| *Defendants* | : | |

**M E M O R A N D U M**

NITZA I. QUIÑONES ALEJANDRO, J.                                                                      APRIL 12, 2023

      Plaintiff Jimmy Lee Wilson, Sr., an inmate currently confined at Bucks County Correctional Facility ("BCCF"), filed this *pro se* action alleging violations of his civil rights. Wilson also seeks leave to proceed *in forma pauperis*. Named as Defendants are: (1) BCCF; (2) Warden Matelis; (3) Ms. Reed, Deputy Warden, and (4) Captain Nottingham. For the following reasons, Wilson will be granted leave to proceed *in forma pauperis* and the Complaint will be dismissed in part with prejudice and in part without prejudice. Wilson will be given an opportunity to cure the noted deficiencies by filing an amended complaint.

**I.    FACTUAL ALLEGATIONS[1]**

      Wilson alleges that his Eighth Amendment rights were violated while an inmate at BCCF. (ECF No. 1 at 3-4.) Specifically, Wilson alleges that he only had limited, sporadic access to water while he was housed on the RHU between January 24, 2023 and January 30, 2023. (*See* ECF No. 1 at 4-6, ECF No. 2 at 1-6.) Throughout the Complaint, Wilson alleges that he was forced to

---

[1]     The allegations set forth in this Memorandum are taken from Wilson's Complaint and Exhibits, which the Court construes together as the Complaint. (*See* ECF Nos. 1 and 2.) The Court adopts the pagination supplied by the CM/ECF docketing system.

remain in his cell during the interim periods when the water was turned off with a toilet that he could not flush, even though he had defecated and urinated in the toilet resulting in an unbearable stench. (*See* ECF No. 2 at 1-6.) During the periods that the water was shut off, Wilson contends that he was unable to access water for drinking and hand washing. (*Id.* at 1-2.) Wilson was told that the water was turned off to the entire RHU because other inmates had flooded their cells. (*Id.* at 2.) Although they are not named as Defendants, Wilson alleges that he complained repeatedly to Corrections Officers on the RHU, including C.O Aponte, Stevenson, Rothrock, Williams, and Lt. Whitesell, but was told that the water could not be turned on because "shift command" need to "send somebody down" to turn the water on. (*See id.* at 1-5.)

The Complaint sets forth a detailed, contemporaneous chronology of Wilson's ability and inability to access water between January 24, 2023 and January 30, 2023. (*See* ECF No. 1 at 6, ECF No. 2 at 1-6.)[2] Wilson did not file grievances pertaining to the lack of water, but instead sent

---

[2]     Wilson alleges that on January 24, 2023, at approximately 12:25 p.m., he was placed in a cell in the RHU. (ECF No. 2 at 1.) Upon arrival in the cell, Wilson discovered urine in the toilet and that the water to the RHU was turned off. (*Id.*) The water remained turned off until approximately 4:45 p.m., when it was turned on for several minutes so that the inmates could flush their toilets and access drinking water, but was turned off again. (*Id.*) The water remained off until 9:45 p.m., when it was again turned on for three minutes so that inmates could flush their toilets and access drinking water. (*Id.*) It appears that the water remained off until 3:25 p.m., the following day, January 25. (*Id.* at 1-2.) On January 25 at approximately 7:30 p.m., Wilson was given his medication, but because the water remained turned off, he was given a cup of water from the nurse who distributed the medication. (*Id.* at 2.) It appears that Wilson was moved from "RHU cell #5 to A-module cell #18" at some point on January 25, but was moved back to RHU cell #5 at 1:46 p.m. on January 26 and the water was shut off at that point. (*Id.* at 3.) At 8:45 p.m. when the nurse arrived to distribute medication, Wilson still did not have water, but was able to take the medication with juice leftover from dinner. (*Id.*) The water remained turned off until C.O. Rothrock turned on the water to Wilson's cell at 10:45 a.m. on January 27 so that the toilet could be flushed. (*Id.* at 3-4.) It appears that the water in Wilson's cell was not turned off again at that time, and remained on even though the water was turned off to the rest of the RHU. (*Id.* at 4.) On January 28, Wilson had water access in his cell while the rest of the RHU did not. (*Id.*) It is unclear if, or when, the water was turned off again to Wilson's cell. (*Id.*) He alleges that he was dehydrated at 7:00 a.m. on January 29 due to a lack of drinking water, although the water was turned on at 9:50 a.m. that morning. (*Id.*) It appears that Wilson's water was turned on at 8:30 p.m. on January 29 for a time, but turned off again. (*Id.* at 4-5.) At 6:50 p.m. on January 30, Sargent Beck announced that the water would be turned on to the RHU and it remained on thereafter. (*Id.* at 5.)

request slips to the "RHU Counselor; RHU Sgt.; Lt.; Captain; Deputy Warden; Warden." (ECF No. 1 at 9, ECF No. 2 at 4-5.)  He had not received a response as of February 1, 2023. (*Id.*)  Wilson seeks monetary relief for his claims. (*See* ECF No. 1 at 5.)

## II.  STANDARD OF REVIEW

The Court grants Wilson leave to proceed *in forma pauperis* because it appears that he is incapable of paying the fees to commence this civil action.[3]  Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the Court to dismiss the Complaint if it fails to state a claim.  Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) ("At this early stage of the litigation, [the Court will] accept the facts alleged in [the *pro se*] complaint as true, draw[] all reasonable inferences in [the plaintiff's] favor, and ask only whether [that] complaint, liberally construed, . . . contains facts sufficient to state a plausible [] claim." (internal quotations omitted)).  Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678.

As Wilson is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021). "This means we remain flexible, especially 'when dealing with imprisoned *pro se* litigants[.]'" *Id.* (quoting *Mala*, 704 F.3d at 244).  The Court will "apply the relevant legal principle even when the complaint has failed to name it." *Id.*  However, "'*pro*

---

[3]  However, as Wilson is a prisoner, he will be obligated to pay the filing fee in installments in accordance with the Prison Litigation Reform Act. *See* 28 U.S.C. § 1915(b).

3

*se* litigants still must allege sufficient facts in their complaints to support a claim.'" *Id.* (quoting *Mala*, 704 F.3d at 245).

### III. DISCUSSION

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). In a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each defendant was involved in the events and occurrences giving rise to the claims. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998). Liberally construing Wilson's Complaint as this Court must, the Court understands Wilson to present claims related to the conditions of his confinement on the RHU. Despite that liberal construction, Wilson has not alleged a plausible basis for a § 1983 claim against any Defendant as set forth below.

### A. Claims Against BCCF

Wilson named as a Defendant BCCF, the jail where the events giving rise to Wilson's claims took place. A jail, however, is not a "person" subject to liability under § 1983. *See Sanabria v. St. Lukes Hosp. (Sacred Heart Campus)*, No. 20-4091, 2020 WL 7495665, at *6 (E.D. Pa. Dec. 21, 2020); *see also Miller v. Curran-Fromhold Corr. Facility*, No. 13-7680, 2014 WL 4055846, at *2 (E.D. Pa. Aug. 13, 2014) (citing *Mitchell v. Chester Cty. Farms Prison*, 426 F. Supp. 271, 274 (E.D. Pa. 1976)); *Cephas v. George W. Hill Corr. Facility*, No. 09-6014, 2010 WL 2854149, at *1 (E.D. Pa. July 20, 2010); *Regan v. Upper Darby Twp.*, No. 06-1686, 2009 WL 650384, at *4

(E.D. Pa. Mar. 11, 2009), *aff'd*, 363 F. App'x 917 (3d Cir. 2010). Accordingly, the Court will dismiss any claims against BCCF with prejudice.

### B. Conditions of Confinement Claims

Wilson presents claims pertaining to the conditions of his confinement at BCCF, specifically related to the intermittent lack of access to water in the RHU from January 24, 2023 to January 30, 2023. The Eighth Amendment governs claims brought by convicted inmates challenging their conditions of confinement. *Hubbard v. Taylor*, 399 F.3d 150, 166 (3d Cir. 2005). Unconstitutional punishment, be it under the Eighth Amendment applicable to convicted prisoners or the Fourteenth Amendment applicable to pretrial detainees, typically includes both objective and subjective components. *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). The objective component requires an inquiry into whether "the deprivation [was] sufficiently serious" and the subjective component asks whether "the officials act[ed] with a sufficiently culpable state of mind[.]" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). In general, a prisoner must assert that prison officials acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson*, 501 U.S. at 298-99; *see also Wilson v. Burks*, 423 F. App'x 169, 173 (3d Cir. 2011) (*per curiam*) ("'[T]he official must both be aware of facts from which the inference could be drawn that a substantial harm exists, and he must also draw that inference.'") (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

To establish an Eighth Amendment violation based on the conditions of confinement, a prisoner must establish that prison officials' acts or omissions denied him "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010) (stating that the Eighth Amendment's prohibition of cruel and unusual punishment requires that prison officials provide "humane

conditions of confinement."). Such necessities include food, clothing, shelter, medical care and reasonable safety. *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000). "However, where conditions are not 'cruel and unusual' but merely 'restrictive and even harsh,' they do not violate the Eighth Amendment but rather 'are part of the penalty that criminal offenders pay for their offenses against society.'" *Barndt v. Wenerowicz*, 698 F. App'x 673, 677 (3d Cir. 2017) (*per curiam*) (quoting *Rhodes*, 452 U.S. at 347).

The Court recognizes that unsanitary conditions can support a cognizable § 1983 conditions of confinement claim. *See, e.g., Mutschler v. Tritt*, No. 20-2022, 2021 WL 5445810, at *3 (3d Cir. Nov. 22, 2021) (*per curiam*) (allegations of unsanitary conditions in prisoner's cell were sufficient to state a cognizable Eighth Amendment claim); *see also Martin v. Gearhart*, 712 F. App'x 179, 187 (3d Cir. 2017) (*per curiam*) (noting that "exposure to human waste carries particular weight in the conditions calculus" ) (quoting *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)); *Carroll v. George W. Hill Corr. Facility*, No. 22-1720, 2022 WL 17539212, at *10 (E.D. Pa. Dec. 8, 2022) (depriving water and access to fluids may in some circumstances demonstrate "deliberate indifference" to sustain a claim) (citing *Collier v. Martinez*, 474 F. App'x 870, 874 (3d Cir. 2012) (*per curiam*)). Nonetheless, a plaintiff must allege facts about the duration and extent of the deprivation to establish how a basic need was not met, and must allege how he was harmed by the unsanitary conditions. *See Toomer v. Camden Cty. Corr. Facility*, No. 17-197, 2017 WL 2483700, *7-8 (D.N.J. June 8, 2017) (noting the "length of exposure to allegedly unsanitary conditions or deprivations is one consideration in evaluating the objective prong to a claim of unconstitutional conditions of confinement" and concluding that plaintiff's "allegation of approximately 48 hours of toilet and water access issues did not rise to the level of a constitutional deprivation"); *Lindsey v. Shaffer*, 411 F. App'x 466, 468 (3d Cir. 2011) (*per curiam*) (concluding

that whether plaintiff suffered harm was critical to determination of whether unsanitary conditions were unconstitutional).

Here, Wilson utilized a form Complaint to present his claims and checked the boxes to indicate that his claims against Warden Matelis, Deputy Warden Reed, and Captain Nottingham are being brought in their official capacities. (*See* ECF No. 1 at 3-4.) Official capacity claims are indistinguishable from claims against the municipality that employs them. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) ("Official-capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'") (quoting *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 n.55 (1978)). "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* Thus, Wilson's claims against Defendants Matelis, Reed, and Nottingham in their official capacities are, in essence, claims against Bucks County.

To plead a basis for municipal liability under § 1983, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *Monell*, 436 U.S. at 694. "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was." *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009). "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)). "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'" *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)). For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant

"had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [plaintiff's] injury." *Id.* (internal quotations and alterations omitted). In other words, "[c]ustom requires proof of knowledge and acquiescence by [a municipal] decisionmaker." *McTernan*, 564 F.3d at 658; *see also Baker v. Monroe Twp.*, 50 F.3d 1186, 1191 (3d Cir. 1995) (to establish municipal liability, the plaintiff "must show that a policymaker for the Township authorized policies that led to the violations or permitted practices that were so permanent and well settled as to establish acquiescence").

To the extent Wilson seeks damages from Warden Matelis, Deputy Warden Reed, or Captain Nottingham in their official capacities, he has failed to allege facts that support *Monell* liability. Wilson has not pled a municipal policy or custom with respect to the alleged constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate indifference. Accordingly, the official capacity claims against Defendants Matelis, Reed, and Nottingham are not plausible and will be dismissed without prejudice.

It is possible that Wilson also seeks to bring claims against Defendants Matelis, Reed, and Nottingham in their individual capacities based on their roles as supervisors. There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).

To set forth a claim for supervisory liability under the policy-and-practice strand of supervisory liability, a plaintiff must:

> (1) identify the specific supervisory practice or procedure that the supervisor failed to employ, and show that (2) the existing custom and practice without the identified, absent custom or procedure created an unreasonable risk of the ultimate injury, (3) the supervisor was aware that this unreasonable risk existed, (4) the supervisor was indifferent to the risk; and (5) the underling's violation resulted from the supervisor's failure to employ that supervisory practice or procedure.

*Chavarriaga v. New Jersey Dept. of Corr.*, 806 F.3d 210, 227 (3d Cir. 2015) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 216 (3d Cir. 2001)). "Put another way, the inmate must identify the supervisor's specific acts or omissions demonstrating the supervisor's deliberate indifference to the inmate's risk of injury and must establish a link between the supervisor, the act, and the injury." *Id.* "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Barkes*, 766 F.3d at 316. "Although a court can infer that a defendant had contemporaneous knowledge of wrongful conduct from the circumstances surrounding a case, the knowledge must be actual, not constructive." *Chavarriaga*, 806 F.3d at 222 (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995); *Rode*, 845 F.2d at 1201 n.6).

Generalized allegations that a supervisory defendant is "in charge of" or "responsible for" an office or facility are insufficient to allege personal involvement in an underlying constitutional violation. *See Saisi v. Murray*, 822 F. App'x 47, 48 (3d Cir. 2020) (*per curiam*) ("Saisi asserted that some defendants were 'in charge of agencies that allowed this to happen,' and that liability stemmed merely from defendants' 'belief' that their conduct would be 'tolerated.' However, a director cannot be held liable 'simply because of his position as the head of the [agency].'"

(quoting *Evancho v. Fisher*, 423 F.3d 347, 354 (3d Cir. 2005))); *see Ogrod v. City of Philadelphia*, 598 F. Supp. 3d 253, 274 (E.D. Pa. 2022) (finding plaintiff, who only alleged that supervisor-defendant was a Lieutenant in the Special Investigations Unit and that other defendants reported to him, failed to support a plausible claim for supervisory liability); *Zigler v. Warren*, No. 21-19474, 2022 WL 903383, at *2 (D.N.J. Mar. 28, 2022) ("In simpler terms, a supervisor is not liable for the unconstitutional conduct of his employees solely because he is a supervisor.").

Despite Wilson's detailed allegations, the precise length of the water deprivations is not entirely clear. Nonetheless, even assuming that the allegations could be liberally construed to support a constitutional claim, Wilson has not plausibly alleged a claim of supervisory liability against any of the named Defendants. First, Wilson has not pled a municipal policy or custom with respect to the alleged constitutional violations, that such policy or custom caused the constitutional violation, or municipal failures amounting to deliberate indifference. Second, Wilson has not adequately tied his allegations to any of Defendants Matelis, Reed or Nottingham. While Wilson alleges that he wrote to them, among others, regarding the lack of water access, (*see* ECF No. 1 at 9, ECF No. 2 at 4-5), he has not alleged any facts that the three named Defendants were responsible for the limited access to water, and appears to draw his conclusion that they were responsible merely based on their supervisory roles. (*See, e.g.,* ECF No. 1 at 5 ("They are the one that violated my 8th amendment right everybody else under them was just following orders.").) Thus, Wilson's conditions of confinement claims against Defendants Matelis, Reed, and Nottingham are implausible as pled. Accordingly, these claims will be dismissed without prejudice.

IV.   **CONCLUSION**

As set forth more fully above, Wilson's § 1983 claims against BCCF will be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) because they are not plausible.  Further, the Court concludes that amendment of these claims would be futile.  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (holding that district courts should dismiss complaints with leave to amend "unless amendment would be inequitable or futile."). Additionally, Wilson's conditions of confinement claims against the other named Defendants will be dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim.  Because the Court cannot say at this time that Wilson could not cure the defects in the claims that have been dismissed without prejudice, and considering Wilson's *pro se* status, he will be granted the option of filing an amended complaint to attempt to cure the defects in those claims.

To the extent that Wilson's March 22, 2023 letter (ECF No. 6) can be construed as a request to appoint counsel, such request is denied without prejudice at this time as premature.  *See Tabron v. Grace*, 6 F.3d 147, 155 (3d Cir. 1993) (in determining whether appointment of counsel is appropriate, the Court should first determine whether plaintiff's lawsuit has a legal basis).  An appropriate Order follows.

*NITZA I. QUIÑONES ALEJANDRO*, J.